1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTICE D. LOHNER,                                    No. C 06-7670 SI (PR)

            Petitioner,                          **ORDER DENYING PETITION FOR
                                                 WRIT OF HABEAS CORPUS**

      v.

KATHLEEN PROSPER, Warden,

            Respondent.

_____/

**INTRODUCTION**

      This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C.
§ 2254.  For the reasons set forth below, the petition is denied.

**BACKGROUND**

      In 2002, a Sonoma County Superior Court jury convicted Petitioner of two counts of first
degree robbery, see Cal. Pen. Code § 211, two counts of second degree robbery, see id., one
count of first degree residential burglary, see id. § 459, one count of attempted grand theft, see
id. § 664/487,  and one count of misdemeanor assault, see id. § 240.  The trial court sentenced
Petitioner to nine years in state prison.[1]  Petitioner appealed.  The California Court of Appeal for
the First Appellate District affirmed the judgment.  (Ans., Ex. 7 at 2.)  The California Supreme
Court denied Petitioner's petition for review (id., Ex. 10), and his two petitions for writ of
habeas corpus (id., Exs. 12 & 14).

      [1] Petitioner informed the Court in October 2009 that he is currently out of custody.  (See
Docket No. 46.)

United States District Court
For the Northern District of California

Evidence presented at trial shows that in March 2002, Petitioner and his co-defendants Cardwell Thomas, Aubrey Kimble, and Brianne Luna, committed several acts of robbery, which the Court will detail below.

As grounds for federal habeas relief, Petitioner claims that:  (1) he was denied his right to an impartial jury because two jurors badgered at least one other juror to convict; (2) the evidence was insufficient to support certain convictions; (3) the trial court violated his due process rights by declining to give jury instructions requested by the defense; (4) the prosecutor engaged in misconduct; and (5) he received ineffective assistance of trial and appellate counsel.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

2

1   judgment that the relevant state-court decision applied clearly established federal law

2   erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

3   A federal habeas court making the "unreasonable application" inquiry should ask whether the

4   state court's application of clearly established federal law was "objectively unreasonable."  Id.

5   at 409.

6

7                                              **DISCUSSION**

8   **I.      Right to Jury**

9          Petitioner claims that the trial court's mishandling of an instance of juror misconduct

10  deprived him of his right to a fair and impartial jury.  (Pet., P. & A. at 1.)  The state appellate

11  court summarized the facts as follows:

12         On July 17, the jury sent a note to the trial court stating that it was unable to reach
           a verdict on the charge of assault . . . with a deadly weapon against [co-defendant]
13         Thomas.  It indicated that it was hung on this count.  One juror had sent a message
           to the bailiff asking for an opportunity to speak with the judge.
14
           That one juror was brought into the courtroom.  He had hoped not to be singled
15         out in this manner, but the trial court — with apologies — indicated that the
           inquiry had to be conducted in this public manner.  The juror stated that he was
16         "really scared" to be called into court to speak in the presence of Thomas,
           [Petitioner] and the attorneys in the case.  He said that he had been instructed to
17         advise the trial court if any inappropriate behavior took place.  He then noted that
           it was difficult to talk about this matter without talking about the charges, but that
18         he would try.

19         [In chambers,] the juror then explained that while the jury was discussing one of
           the charges, two jurors intimidated him and made him feel that it was not safe for
20         him to express his opinion on the matter.  Eventually, he did state his opinion,
           prompting these two jurors to tell him that "if anything happen[ed] in the future
21         [, it would be his] fault."

22         The trial court asked the juror if he had changed his verdict because of the conduct
           of these jurors.  He replied that he believed that the two jurors intended for him
23         to change his verdict, but that he had not done so.  "I have not changed my
           position" despite their "badgering," he told the trial court.  The trial court allowed
24         the attorney to ask questions of the juror.  The prosecutor learned from her
           questions and the juror's responses that the issue centered on only one count and
25         that the verdict he expected the jury to return would truly reflect his position.  "I
           don't feel real safe" in the jury room, the juror told the court, adding that he felt
26         "it's really important for the Court to know that."  The attorneys representing
           Thomas and [Petitioner] were also invited to ask questions of the juror.  Only
27         [Petitioner's] attorney took up the offer.  He asked the juror if further deliberation
           on the disputed count would persuade the juror to change his vote or if that juror
28

United States District Court
For the Northern District of California

3

felt that they were at an impasse. The juror replied that they were at an impasse on a single count.

At this point, the trial court brought the remaining jurors into court. It conducted an inquiry into the jury's note about the Thomas charge of assaulting [one of the victims] with a deadly weapon and determined that there was no further guidance it could offer that might help the jury decide this outstanding issue. The jurors agreed that they had completed the remaining verdicts, which were then read into the record. The jurors were unable to reach a verdict and the trial court declared a mistrial on the charge that Thomas assaulted [one of the victims] with a deadly weapon.

(Ans., Ex. 7 at 61–62.). After the jury returned its verdict, Petitioner filed a motion for a new trial, based on juror intimidation, which was denied.[2] (Id. at 63.)

The state appellate court rejected Petitioner's juror misconduct claim. The state court declared that Petitioner had not suffered prejudice, citing the juror's statements that he did not change his verdict because of the intimidation, and because the intimidation concerned a charge against Petitioner's co-defendant Thomas, not Petitioner himself. (Id. at 64–65.)

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI. "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523–24 (9th Cir. 1990) (internal quotations omitted). However, the Constitution "does not

_____

[2] "[Petitioner] argued that the two jurors had cornered the reporting juror in a bathroom and discussed the matter with him in violation of their oath not to discuss the case. He characterized the juror's statement that if anything happened in the future, it would be the fault of the reporting juror as referring to all the crimes charged in this matter. [Petitioner] reasoned that this was proven bias constituting a presumption of prejudice tainting the verdicts. He argued that when the two jurors attempted to pressure a third juror, it affected all the counts. He criticized the trial court for failing to question the jurors to determine who had tried to pressure the reporting juror and who else 'may have been opposed' in this matter. He suggested that other jurors may have felt pressured by the two jurors who tried to pressure the reporting juror. He asked for a new trial on grounds of jury misconduct and sought an evidentiary hearing to determine whether the misconduct had affected other jurors.

A hearing was conducted on [Petitioner's] motion for new trial. The prosecutor noted that [Petitioner's] assertions about the juror being confronted in a bathroom were not supported by any evidence. She also argued that the only count that could have been the subject of the jurors' discussion was the assault with a deadly weapon charge against Thomas on which the jury did not reach a verdict. The trial court denied [Petitioner's] motion for new trial on all grounds. On this specific ground for new trial, it reasoned that the jury dispute centered on a count against Thomas and that the juror made it 'very clear' that his verdict was not altered by attempts at intimidation." (Id. at 62–63.)

4

require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). Due process only means a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Id.

Applying these legal principles to the instant matter, the Court concludes that Petitioner has not shown that he is entitled to habeas relief on this claim. First, contrary to Petitioner's assertions, the trial court did properly investigate the allegations of juror intimidation and bias, as the record demonstrates. The trial court questioned the juror in front of the prosecutor and defense counsel, who had an opportunity to ask questions of the juror. After assuring that the juror did not change his verdict under pressure from other jurors, the trial court allowed the deliberations to continue. Second, whatever juror misconduct occurred, Petitioner has not shown that he suffered prejudice. As the state appellate court pointed out, the intimidation arose from a juror dispute over a charge against Thomas, not against Petitioner. Also, the juror clearly stated that the intimidation had no effect on his decision. From this record, due process was accorded to Petitioner in that he had a jury capable and willing to decide the case on the evidence before it, and a trial judge watchful to prevent prejudicial occurrences. Accordingly, Petitioner's claim is denied.

## II.     Sufficiency of the Evidence

Petitioner claims that the evidence was insufficient to support the element of force or fear required to convict him of robbery.   (Pet., P. & A. at 5–13.)  There were three robberies:  the Soto and Espinoza robberies, Guidi robbery, and the Meyers robbery.  The Court will address Petitioner's claims regarding the convictions for these robberies in turn.

### A.     The Soto and Espinoza Robberies

Petitioner claims that his conviction for the robberies of Valentin Soto and Virgilio Espinoza was not supported by sufficient evidence of the element of force or fear.  (Id. at 5.)

5

The state appellate court summarized the facts of the robberies as follows. Before dawn on the day of the robbery, Petitioner, Cardwell Thomas, Brianne Luna, and Aubrey Kimble, drove up to and approached Soto, who was waiting in a parking lot for his employer, and offered him work. While Petitioner and Soto were talking, Soto's acquaintance Espinoza rode up on his bicycle, whereupon Petitioner offered Espinoza work as well. Thomas then asked the two for their identification, and showed them a police badge in his wallet. Though unsure whether Thomas was a police officer, Soto and Espinoza took out their wallets in order to show him their identification. Petitioner then took Soto's wallet, and Thomas struck Espinoza. Espinoza tried to strike back, but an unidentified person tried to grab him and then hit him from behind. Espinoza fled, not realizing that he'd been stabbed. Soto fled after Espinoza was struck. (Ans., Ex. 7 at 5–6.)

The state appellate court rejected Petitioner's claim, finding that sufficient evidence had been presented on the element of fear. Elaborating on what constitutes sufficient evidence of fear, the state court declared that a "victim need not testify that he or she was afraid as long as there is some evidence from which a jury may infer that he or she was afraid and that this fear allowed the crime to be accomplished." (Id. at 17.) On this point, the state court found the following facts supportive of their determination: the perpetrators outnumbered the victims, the early time of day, the relative isolation where the crimes were committed, and Soto fled the vicinity when Espinoza was attacked.

Robbery is "the felonious taking of personal property in the possession of another from his or her person or immediate presence, against his or her will, accomplished by means of force or fear." (Ans., Ex. 7 at 16.) Robbery is also a "continuing offense," and is not completed until the perpetrator "has reached a place of temporary safety," which cannot include the crime scene itself, even if the victim flees the scene. (Id. at 17-18.) The circumstances that create fear "may be achieved at any time before the robbery is complete." (Id.)

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982

F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324.

Applying these legal principles to the instant action, the Court concludes that Petitioner has not shown that he is entitled to habeas relief on this claim.  A rational trier of fact could have found from the evidence presented that Petitioner committed the crime with the use of fear: Petitioner and his co-perpetrators approached a single man in the early hours, offered him work in order to disarm him, and falsely represented that they were the police in order to encourage by means of fear compliance with their request for his identification.  Further, as robbery is a continuing crime, evidence that the perpetrators struck Espinoza after Soto's wallet was taken provided a basis on which a reasonable jury could find that Petitioner used fear to accomplish the robberies against Soto and Espinoza.  On this record, Petitioner's claim must be denied.

### B.     The Guidi Robbery

Petitioner claims that his conviction for the robberies of Jessica and Anthony Guidi was not supported by sufficient evidence of the element of force or fear.  (Pet. at 7, 9.)  Petitioner further contends that Jessica and Anthony did not have "actual or constructive possession of the property taken."  (Id. at 9.)

The state appellate court summarized the facts of the robberies as follows.  At dawn on the day of the robbery, Jessica, aged fourteen, answered a knock on the door of her family's trailer to find Petitioner, Thomas, and another man standing before her.  (Brianne Luna had driven the defendant to the trailer.)  The three men identified themselves as police officers, and entered the Guidi trailer.  Hearing these voices, Anthony Guidi, Jessica's sixteen year old brother, woke up and joined his sister.  (Their father had left for work some time before the robbers appeared.)  Petitioner and the other two again said that they were police officers, and

United States District Court
For the Northern District of California

Thomas "very quickly flashed a badge." "Thomas asked Jessica questions, telling her that if she did not cooperate with them, she would be arrested.  They told Jessica that they were there for marijuana."  The three perpetrators and the Guidis searched for marijuana and drug money, but found none.  Petitioner took a bong from Anthony.  At some point, the third perpetrator left the trailer, leaving Thomas and Petitioner.[3]  Thomas then told the Guidis to wait in the bathroom after he assured that there was no telephone in there.  The Guidis saw Petitioner and Thomas placing DVDs in Jessica's sleeping bag.  The men left the trailer.  After the men left, Anthony noticed that his watch was missing.  The state appellate court stated that "Jessica was frightened of the strangers."  "She and her brother were both crying in the bathroom.  She and Anthony remained there for about five minutes until they heard a vehicle leave."  (Ans., Ex. 7 at 4–5.)

The state appellate court rejected Petitioner's claims regarding the fear and possession issues.  As regards the element of fear, the state court found that evidence existed that Jessica and Anthony experienced fear because she believed Petitioner and the others to be police officers, and then experienced fear later when she realized that they were not police officers.  (Id. at 23, 24–25.)  Both victims cried in the bathroom, and Anthony testified that "the 'situation' was 'scary' '[r]ight from the start."  (Id. at 5, 24.)

As to the issue of possession, the state appellate court declared that under California law, one need not own the property for its taking to constitute robbery.  "Constructive possession"

---

[3] Petitioner contends that he was the person who left, leaving as soon as he discovered Thomas's criminal intentions.  (Pet., P. & A. at 13.)  Based on this assertion, Petitioner contends that there was insufficient evidence of his participation in the Guidi robbery and burglary.  (Id.)  The state appellate court rejected this claim.  This Court finds no constitutional error in the state court's rejection of this claim because there was sufficient evidence of Petitioner's participation in the crime, even if he was the man who left the trailer first.  Testimony of an accomplice, Brianne Luna, provided evidence that all four perpetrators, including Petitioner, drove to the trailer with the intent to steal marijuana and use it to obtain cocaine, which is evidence indicative of criminal intent.  (Ans., Ex. 7 at 34.)  Also, Petitioner himself testified that he entered the trailer and stayed a few minutes before leaving.  (Id.)  This testimony provides evidence on which a reasonable juror could find that Petitioner's presence alone created fear in the victims.  Also, even if Petitioner left the trailer before the property was taken, he did not, on the evidence presented, withdraw as an aider and abettor.  A legally valid withdrawal requires notifying his co-perpetrators of his change of heart, and then doing everything in his power to prevent the commission of the crimes.  (Id. at 36.)  No evidence meeting these requirements was presented at trial.  Accordingly, the Court denies this claim.

is sufficient, and can be established if a family member is entrusted with the protection and preservation of property. (Id. at 21–22.) The state appellate court found that Jessica's testimony that she visited her father at the trailer, and that she often stayed there in a room that was considered hers, constituted evidence that the trailer was her house. Because it was her house, Jessica had constructive possession of the property in her house, and was entrusted with the protection and preservation of its property while her father was away. For similar reasons, Anthony, who lived at the trailer, had constructive possession of the property. (Id.)

Based on this record, Petitioner has not shown that he is entitled to habeas relief on his claims. First, this Court must presume that the state appellate court's legal determinations based on state law are correct. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Likewise, the state court's factual findings are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). On these two points, the Court concludes that a rational trier of fact could have found from the evidence presented that Petitioner committed the crime with the use of fear, as a recitation of the facts demonstrates. Jessica, fourteen, and Anthony, sixteen, were alone at their house, their father having already left for work. Three adults appear on their doorstep at dawn, identify themselves as police officers, enter the trailer without invitation, threaten Jessica with arrest in order to secure her cooperation, demand that the Jessica and Anthony find the alleged marijuana in the house, and then sequester them in the bathroom while the men rob the place. These events were startling, shocking, and, certainly, fear-inducing, especially for such young persons. On this record, the Court concludes that a rational trier of fact could have found the element of force or fear beyond a reasonable doubt.

As to the issue of possession, this Court is bound by the state court's legal determination that Jessica and Anthony possessed the property under California law and that any taking of it by fear or force would constitute robbery. Accordingly, this Court must conclude that there was sufficient evidence on which a rational trier of fact could find that Jessica "possessed," for purposes of California law, the property — she lived in the trailer from time to time, and even had a room there, giving her construction possession of the items taken. Likewise, Anthony

9

constructively possessed the items that were taken, and his own property — the bong — was taken from his presence.

Petitioner's claims regarding the Guidi robbery are denied.

## C.    The Meyers Robbery

Petitioner claims that his conviction for the robbery of Austin Meyers not supported by sufficient evidence of the element of force or fear.  (Id. at 11.)

The state appellate court summarized the facts as follows.  Victim Austin Meyers was approached at his workplace by an acquaintance who asked Meyers to help him buy marijuana for himself and his companions.  These companions were Petitioner and Thomas, and two other men.  Meyers agreed to the transaction, left to purchase marijuana, and drove to a secluded residential neighborhood to meet the men to complete the transaction:

> Thomas pulled out his wallet, announced that he was an undercover police officer, and flashed some kind of identification.  He told Meyers that he was under arrest and ordered him to stop the car.  Shocked, Meyers did so.  At first, Meyers thought Thomas had shown him a real police badge, but soon he realized that he was being robbed instead of arrested.  Thomas and [Petitioner] both seemed too young to be real police officers.
>
> Thomas and [Petitioner] began shouting and cursing at Meyers, telling him how stupid he was.  Meyers was frightened.  [Petitioner] took his wallet from him and emptied it of the cash — perhaps as much as $150.  At Thomas's direction, Meyers got out of the car and emptied the contents of his pockets onto the hood of the car.  The Bronco truck with two men inside pulled up along his car, making Meyers even more afraid.  As [Petitioner] stood with Meyers, Thomas searched his car, taking marijuana, about 100 CD's, a cell phone, a backpack and Meyers's keys.  He also confirmed that [Petitioner] had already gotten the cash from Meyers's wallet.  They also took the contents of his pockets.  Thomas and [Petitioner] got into the Bronco and left.

(Ans., Ex. 7 at 3–4.)

The state appellate court rejected Petitioner's claim that there was insufficient evidence of the element of force or fear:

> Meyers testified that he was afraid, despite the fact that no verbal threats were made and no force was used to take his property.  They were four people and he was one.  He felt an implied physical threat and did not believe that he could have stopped the looting of his vehicle.  The situation was scary and he felt intimidated by Thomas and his companions.  He was afraid that he would be beaten if he resisted them.  Thus, we find sufficient evidence to support the jury's implied

10

1   finding of force or fear.

2   (Id. at 26.)

3   On this record, the Court concludes that a rational jury could have found the element of

4   fear beyond a reasonable doubt. Meyers was on his own at night, outnumbered by four men, two

5   of whom had identified themselves as police officers, and who yelled at Meyers in an attempt

6   to intimidate him. These particular details provide evidence on which a rational jury could find

7   that Petitioner and his companions committed the robbery by putting Meyers in fear.

8   Accordingly, Petitioner's claim is denied.[4]

9

10  **III.    Jury Instructions**

11  Petitioner claims that the trial court violated his right to present a defense when it refused

12  to give a pinpoint jury instruction on (A) aiding and abetting, and (B) fear for purposes of taking.

13  (Pet., P. & A. at 14.) The state appellate court rejected these claims, finding that the trial court's

14  instructions correctly stated the law of aiding and abetting, and of taking accomplished by fear.

15  (Ans., Ex. 7 at 44, 45.)

16  Due process requires that "'criminal defendants be afforded a meaningful opportunity to

17  present a complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting

18  California v. Trombetta, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled

19  to adequate instructions on the defense theory of the case. See Conde v. Henry, 198 F.3d 734,

20  739 (9th Cir. 2000). A defendant is entitled to an instruction on his defense theory only "if the

21  theory is legally cognizable and there is evidence upon which the jury could rationally find for

22  the defendant." United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009) (internal

23  ────────────

24  [4] Petitioner also contends that there was insufficient evidence of his participation in the
Meyers robbery (Pet., P. & A. at 12). The state appellate court rejected this claim, declaring,
25  "Regardless of whether he committed an overt act during the robbery, there was evidence
offered at trial suggesting that his presence encouraged Thomas and acted as a deterrent to any
26  resistance from Meyers." (Ans., Ex. 7 at 27.) On this evidence, the Court concludes that a
rational trier of fact could have found that Petitioner was a participant the criminal acts. His
27  presence at the crime scene helped intimidate the victims. Also, Thomas's asking whether he
had Meyers's money indicates that Petitioner was not merely a bystander, but rather a knowing
28  participant in the criminal acts. Accordingly, Petitioner's claim is denied.

United States District Court
For the Northern District of California

1   quotations omitted).  The defendant is not entitled to have jury instructions raised in his or her

2   precise terms where the given instructions adequately embody the defense theory, <u>United States</u>

3   <u>v. Del Muro</u>, 87 F.3d 1078, 1081 (9th Cir. 1996) , nor to an instruction embodying the defense

4   theory if the evidence does not support it, <u>Menendez v. Terhune</u>, 422 F.3d 1012, 1029 (9th Cir.

5   2005).

6

7           **A.     Aiding and Abetting Instruction**

8           Petitioner sought to add the following language to the aiding and abetting instruction

9   given by the trial court:

10          Proof that a defendant only stood by at the time of the offen[s]e is alleged to have
            been committed is insufficient to prove defendant guilty.  Unless the prosecution
11          ha[s] proven beyond a reasonable doubt that the defendant aided and abetted the
            crime as defined elsewhere in these instructions, you must find the defendant not
12          guilty.  If you have reasonable doubt whether the defendant aided and abetted the
            crime, you must resolve that doubt in favor of the defendant and find him not
13          guilty.

14   (Pet., P. & A. at 14.)  The trial court gave the following instruction on aiding and abetting:

15          A person aids and abets the commission or attempted commission of a crime when
            he or she,
16
            (1) With knowledge of the unlawful purpose of the perpetrator, and
17
            (2) With the intent or purpose of committing or encouraging or facilitating the
18          commission of the crime, and

19          (3) By act or advice aids, promotes, encourages or instigates the commission of
            the crime.
20
            Mere presence at the scene of a crime which does not itself assist the commission
21          of the crime does not amount to aiding and abetting.

22          Mere knowledge that a crime is being committed and [in the absence of a legal
            duty to take every step reasonably possible to prevent the crime,] the failure to
23          prevent it does not amount to aiding and abetting.

24
25   (Ans., Ex. 1, Vol. 1 at 200.)  The trial court also instructed the jury that the prosecution had the

26   burden to prove defendant's guilt beyond a reasonable doubt.  (<u>Id.</u> at 198.)

27          Here, Petitioner's claim fails because the language Petitioner sought to add was

28   sufficiently similar to that in the trial court's instructions.  Specifically, the given "[m]ere

presence" is ideationally similar to Petitioner's "only stood by." A person who is merely present at a crime <u>is</u> someone who only stood by, that is, was present at the crime scene but did not physically participate in the criminal acts. The given jury instructions, then, contained Petitioner's legal assertion that simply being present while a crime is being committed is not sufficient evidence on which a conviction can be sustained. Petitioner's proposed addition to the jury instruction was superfluous, and therefore its exclusion did not violate Petitioner's constitutional right to a fair trial.

Also, Petitioner's proposed language regarding reasonable doubt is sufficiently covered by the trial court's instruction to the jury that it must find the elements of each crime beyond a reasonable doubt. (Ans., Ex. 1 at 198.) Because of this similarity, the Court concludes that Petitioner's due process right to present a defense was not violated.

Accordingly, Petitioner's claim is denied.

**B.    Taking Accomplished By Fear**

Petitioner sought to add the following to the version of CALJIC 9.40, the jury instruction on taking: "A taking is not accomplished 'by fear' unless, as a result of the perpe[]trators['] actions, the victim was in fact afraid and such fear allowed the taking to be accomplished." (Pet., P. & A. at 14.)

CALJIC No. 9.40, as read to Petitioner's jury, reads in relevant part as follows: "Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive that person of the property, is guilty of the crime of robbery."

Here, the language Petitioner sought to add was sufficiently similar to given by the trial court. "[A]ccomplished" means "to bring about by effort," indicating that the act must be brought about intentionally. The given instruction causally links "accomplished" to "fear" and "force" through the preposition "by." The trial court's instruction is saying, in other words, that

United States District Court
For the Northern District of California

the intentional act is brought about through the use of fear or force.  If it is so accomplished, the victim must in fact have been afraid — if there was no actual fear, the act would not have been brought about, or accomplished.  In sum, "accomplished by means of force or fear" is ideationally similar to Petitioner's "the victim was in fact afraid and such fear allowed the taking to be accomplished."  Petitioner's proposed addition to the jury instruction was superfluous, and therefore its exclusion did not violate Petitioner's constitutional right to a fair trial.

## IV.     Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct in various ways, the specific instances of which the Court will detail below.  (Pet., P. & A. at 18ff.)

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair.  Smith v. Phillips, 455 U.S. 209, 219 (1982).  The first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.) (citation omitted).

### A.     Prosecutor's Comments in Opening Statement

Petitioner contends that the following statements by the prosecutor in her opening statement constitute prosecutorial misconduct: (1) "this is a case about the defendants preying on the weak," (2) the defendants were "sophisticated" while the victim Meyers was an "innocent teenaged type kid," (3) the jury should rely on their own knowledge of the county,[5] (4) Meyers had no intention of making a profit on the marijuana transaction, (5) one of the defendants hit

---

[5] The prosecutor described where in Sonoma county the defendants first met Meyers. (Ans., Ex. 7 at 50 n.31.)

United States District Court
For the Northern District of California

1   Jessica, (6) that robbing Mexicans in Fulton was Petitioner's idea, and (7) that Espinoza was
2   "struggling" to keep his wallet.

3           As to the first two statements, this Court cannot disagree with the determination of the
4   state appellate court, which found that these comments were reasonable inferences from the
5   evidence.  Evidence presented at trial supports the prosecutor's assertion that the defendants
6   were sophisticated and that the victims were weak:  the defendants used badges to ensure
7   compliance, they confronted victims (some quite young) in the early hours of the day, and
8   appeared in large numbers so as to outnumber their victims.

9           As to the third statement, the Court cannot find any constitutional error in the state
10  appellate court's determination that this statement by the prosecutor was nothing more than "an
11  innocuous attempt to describe the scene of Meyers's initial meeting with Thomas and
12  [Petitioner] so that they jury would understand why Meyers's drug sale and the crimes
13  committed against him occurred at a different location." (Ans., Ex. 7 at 50 n.31.)  Petitioner has
14  not shown that such a comment was improper, let alone whether such a comment resulted in
15  prejudice.

16          As to the fourth statement, the Court cannot find any constitutional error in the state
17  appellate court's determination that the comment was irrelevant to the issue of Petitioner's guilt.
18  In her opening statement, the prosecutor stated that Meyers sold the marijuana to the defendants
19  for the same price at which he purchased it.  However, Meyers testified that made five to ten
20  dollars from the transaction.   (<u>Id.</u> at 52.)  The state appellate court found this discrepancy
21  between the prosecutor's statement and Meyers's testimony "slight" and "not relevant."  (<u>Id.</u>)
22  This Court cannot disagree with this determination.  A statement regarding Meyers's profit-goal
23  is not relevant to whether Petitioner helped to rob Meyers, nor can this Court see how it is
24  possible that such statement had any effect on the jury's verdict.

25          As to the statement that one of the defendants hit Jessica, this Court finds no
26  constitutional error in the state appellate court's determination that such statement was supported
27  by Jessica's testimony.  Jessica testified that during the robbery, the defendants entered her

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

father's bedroom, "they ransacked it, flipped over the mattress and ended up hitting [Jessica]." (Ans., Ex. 7 at 51.) Because the prosecutor's statement was a fair comment on the evidence, this Court cannot say that the statement was improper.

As to the statement regarding whose idea it was to rob Mexicans, this Court finds no constitutional error in the state appellate court's determination that such statement was not misconduct. The prosecutor based her statement on evidence that was produced at the preliminary hearing, but was not presented at trial. The state appellate court concluded that the prosecutor "could reasonably have expected when making her opening statement that this same evidence would be adduced at trial." (Id. at 52.) When viewed in this context, this Court cannot say that the prosecutor's reference to admissible evidence she expected to adduce at trial was improper. More significantly, Petitioner has not shown that he was prejudiced by such a remark. First, the jury was instructed that statements by counsel are not evidence. (Id., Ex. 1, Vol. 1 at 187.) Second, the effect, if any, of the prosecutor's statement was greatly weakened by the fact that the prosecutor failed to produce evidence to support such statement. Finally, considering the strength of the evidence against Petitioner, the Court cannot say that the prosecutor's statement, even if improper, so infected the trial with unfairness that Petitioner's resulting conviction violated due process.

As to the final statement, this Court finds no constitutional error in the state appellate court's determination that the evidence supported the prosecutor's statement that Espinoza struggled to keep his wallet, as an examination of Espinoza's testimony shows. (Id., Ex. 2, Vol. 1 at 47–48, 60–61, 65–66.) Also, Petitioner has not shown that he was prejudiced by the remark. Soto and Espinoza provided strong evidence of Petitioner's guilt through their testimony, which the jury found credible. In the face of this strong evidence, the Court cannot say that the prosecutor's comment led to an unconstitutional conviction.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Closing Statement**

Petitioner contends that the prosecutor "mischaracterized . . . the law of aiding and abetting" by repeatedly arguing that Petitioner should be held criminally liable for "just standing around in the vicinity of the crime." The state appellate court rejected Petitioner's claim, finding that not only had the prosecutor correctly stated the law, but that "the evidence supported more than [Petitioner's] mere presence at the scene of these incidents and that the prosecutor's arguments about his responsibility as an aider and abettor even if he did not take the most active role in some or all of them was a proper argument based on a correct analysis of the controlling law." (Ans., Ex. 7 at 56–57.)

Petitioner's assertion is not supported by the record. Specifically, the evidence supported the prosecutor's contention that Petitioner's presence was intimidating to the victims, and that this intimidating presence was not "mere" or happenstance, but a part of his direct participation in the planning and execution of the crimes. For example, in the Guidi robbery, testimonial evidence demonstrated that Petitioner planned to rob the Guidis. As part of that plan, he appeared at the door of the Guidi trailer, and entered with his co-perpetrators under the authoritative and intimidating guise of being police officers. The prosecutor was entitled to argue on this evidence that Petitioner was not merely standing by, but that his presence and participation in this group intimidated the victims, and furthered the completion of the crimes.[6]

Petitioner also contends that the prosecutor misstated the law regarding the element of "fear" in the crime of robbery. The state appellate court rejected this claim, finding that the prosecutor correctly stated the law of robbery. (Ans. Ex. 7 at 58.) This claim is a reiteration of his claim regarding the meaning of "fear" in the crime of robbery. The Court has addressed the

---

[6] Petitioner also contends that in her closing argument, the prosecutor "confused" the elements of aiding and abetting with the requirements for withdrawal from a conspiracy, thereby placing the burden on Petitioner to prove his lack of involvement with the crimes. (Pet., P. & A. at 20.) The record does not support Petitioner's contention. The prosecutor correctly stated, and did not confuse, the law of aiding and abetting, and withdrawal from a conspiracy. Also, the prosecutor placed no burden on Petitioner, but rather described that there was no evidence that his actions met the requirements of a legally valid withdrawal. (Ans., Ex. 2, Vol. 3 at 551.)

17

1    merits of this claim above, and need not repeat its analysis here.  Accordingly, Petitioner's claim

2    is denied.

3

4            **C.    Prosecutor's Rebuttal**

5            Petitioner objects to the prosecutor's statement that the victims of these crimes all had "a

6    stake" in the outcome of the case.  (Pet., P. & A. at 21.)  Petitioner contends that by this

7    comment, the prosecutor was urging the jurors to treat this criminal action as a civil action,

8    thereby encouraging them to use a preponderance, rather than a reasonable doubt standard of

9    determining guilt.  Petitioner further contends that this statement encouraged the jury to see the

10   evidence through the eyes of the victims, something forbidden under California law.  The state

11   appellate court rejected Petitioner's claims, finding that the prosecutor's comment, when seen

12   in context, was not improper.

13           The record supports the state appellate court's determination that the remarks were not

14   improper.  First, the "stake" comment was not victim-focused.  Rather, the prosecutor's

15   comment was that everyone — including Petitioner — had a stake in the outcome of the trial,

16   and went so far as to say that, "Nobody has a greater stake than anyone else."  (Ans., Ex. 7 at

17   60.)  Second, the use of "stake" was part of the prosecutor's larger discussion of the seriousness

18   of the task the jury faced.  Immediately before the prosecutor made the objected-to comments,

19   she told the jury that it should <u>not</u> be influenced by sympathy or passion for the victims or for

20   the defendants.  (<u>Id.</u>)  Also, the prosecutor reminded the jury "not to be influenced by pity or

21   prejudice against [Petitioner], not [to] be biased against the [Petitioner] because he's been

22   arrested," and not to "be influenced by sentiment, conjecture, sympathy, passion, [or] public

23   opinion."  (<u>Id.</u>)  This record clearly indicates that the prosecutor's comments, when seen in the

24   larger context of her statements, were not improper.  She instructed the jury to pay attention to

25   the evidence rather than emotion, and emphasized the seriousness of the trial for all persons

26   concerned in it.

27           On a final note on this claim, Petitioner has not shown that the use of "stake" lowered

28

United States District Court

For the Northern District of California

18

the burden of proof.  The jury was instructed by the trial court that it had to find that the evidence established guilt by a reasonable doubt in order to sustain a conviction.  (Ans., Ex. 1 at 198.)    The appearance of "stake" does not, on the record before the Court, change this significant instruction on the criminal trial standard of proof.

Petitioner also contends that the prosecutor improperly led Soto to identify Petitioner. The record does not support Petitioner's contention.  The transcript indicates that Soto made an unequivocal identification of Petitioner as the perpetrator, an identification that was not improperly influenced by the prosecutor.  (Ans., Ex. 2, Vol. 1  at 9–10.)[7]

Petitioner also contends that the cumulative effect of the prosecutor's alleged misconduct violated his right to due process.  (Pet., P. & A. at 22.)  Because the Court has determined that Petitioner has not shown that the prosecutor committed misconduct, the Court also concludes that there was no accumulation of instances of misconduct, and, therefore, there was no due process violation.

Petitioner's prosecutorial misconduct claims are denied.

## V.    Assistance of Trial and Appellate Counsel

Petitioner claims that both trial and appellate counsel rendered ineffective assistance, thereby violating his Sixth and Fourteenth Amendment rights.

### A.    Trial Counsel

Petitioner claims that trial counsel rendered ineffective assistance at trial and at sentencing, thereby depriving him of his Sixth Amendment rights.  (Pet., P. & A. at 24.) Petitioner lists many alleged deficiencies in trial counsel's performance, the majority of which

---

[7] Petitioner also contends that the prosecutor committed misconduct when she asked a leading question at the preliminary hearing. (Pet., P. & A. at 23.) Whatever the possible merits of Petitioner's claim, it is Petitioner's trial, at which the jury was present, not his preliminary hearing, at which the jury was not present, that is the subject of this order.  At trial, Soto unequivocally identified Petitioner as the man who took his wallet, an identification made in response to a non-leading question put to Soto by the prosecutor. (Ans., Ex. 2, Vol. 1 at 9, 20.)

**United States District Court**
For the Northern District of California

1    concern trial preparation and tactics.  The Court will address the specific allegations below.

2        Claims of ineffective assistance of counsel are examined under <u>Strickland v. Washington</u>,

3    466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, a Petitioner

4    must establish two things.  First, he must establish that counsel's performance was deficient, i.e.,

5    that it fell below an "objective standard of reasonableness" under prevailing professional norms.

6    <u>Id.</u> at 687–68.  Second, he must establish that he was prejudiced by counsel's deficient

7    performance, i.e., that 'there is a reasonable probability that, but for counsel's unprofessional

8    errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable

9    probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>  Where the

10   defendant is challenging his conviction, the appropriate question is "whether there is a

11   reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

12   respecting guilt."  <u>Id.</u> at 695.  It is unnecessary for a federal court considering a habeas

13   ineffective assistance claim to address the prejudice prong of the <u>Strickland</u> test if the Petitioner

14   cannot even establish incompetence under the first prong.  <u>See</u> <u>Siripongs v. Calderon</u>, 133 F.3d

15   732, 737 (9th Cir. 1998).

16       As to the first <u>Strickland</u> prong, Petitioner's allegations that trial counsel's performance

17   at trial was deficient are too amorphous or too undetailed for the Court to address, e.g.,

18   inadequate preparation for trial and a failure to object to "tainted identification procedures."

19   Second, Petitioner's allegations that trial counsel had no strategy for trial and that he failed to

20   adequately prepare Petitioner for his testimony at trial are not supported by the record.  The trial

21   transcript indicates that trial counsel outlined a reasonable defense of Petitioner in his opening

22   statement — that Petitioner did not participate in, or withdrew from, the crimes, and that there

23   was no evidence of force or fear — and adequately attempted to support this defense throughout

24   trial.  (Ans., Ex. 2, Vol. 2 at 385–86.)  Also, there is nothing in the record to indicate that

25

26

27

28

United States District Court
For the Northern District of California

1  Petitioner was inadequately prepared to testify.[8]

2      Petitioner is similarly unable to show that trial counsel's performance was otherwise

3  deficient.  Petitioner alleges that trial counsel failed to file a motion for a new trial, failed to

4  include some beneficial information about Petitioner at sentencing,[9] and failed to advocate for

5  a sentencing alternative to incarceration in state prison.  First, Petitioner has not stated the

6  grounds on which a motion for a new trial could have been based, let alone whether such a

7  motion was likely to have succeeded.  Second, Petitioner has not shown that the inclusion of

8  allegedly beneficial sentencing information would have resulted in a better sentence.  The record

9  indicates that the trial court arrived at its sentence after a thorough consideration of all evidence,

10 including Petitioner's letters.  On this record, the Court cannot say that Petitioner's additional

11 information would have affected the decision, which appears to have been a reasonable

12 determination on the facts before the trial court.  Third, Petitioner has not shown that he has a

13 clearly established federal right to a sentencing alternative, let alone that a competent attorney

14 would have argued for one.

15      As to the second Strickland prong, Petitioner is unable to show that any prejudice resulted

16 from trial counsel's alleged deficiencies.  In other words, the evidence of Petitioner's guilt was

17 so strong that Petitioner is unable to show that but for trial counsel's alleged errors, there was

18 a reasonable possibility that the outcome would have been different.  The prosecution presented

19 eyewitnesses to all the crimes, all of whom testified without reservation that Petitioner

20 participated in criminal acts against them.  On this record, the Court must deny Petitioner's

21

22      [8] Petitioner contends that defense counsel rendered ineffective assistance when he failed
   to object to the introduction into evidence of a recorded conversation Petitioner had with a police
23 detective. (Pet., P. & A. at 26.)  Petitioner asserts that the police detective failed to read him his
   Miranda rights, and told Petitioner that the conversation was not being recorded.  (Id.)
24 Petitioner, however, has not shown how defense counsel's failure to object resulted in prejudice.
   Specifically, Petitioner does not detail what statement(s) he made in the taped conversation that
25 were improper or prejudicial.  Without more specificity, this Court cannot assess the merits of
   Petitioner's claim, which, under these circumstances, must be denied.

26      [9] According to Petitioner, defense counsel should have informed the trial court that Petitioner
   had a minor and non-violent criminal history, was a good parent, and that Petitioner was two weeks
27 away from receiving his real estate license before the acts with which he was charged were committed.
   (Pet., P. & A. at 26.)
28

United States District Court
For the Northern District of California

1    ineffective assistance of counsel claims.[10]

2

3        **B.    Appellate Counsel**

4        Petitioner claims that his appellate counsel rendered ineffective assistance by failing to

5    respond to Petitioner's communications, and by failing to inform Petitioner about the filing and

6    progress of his direct appeal.  (Pet., P. & A. at 27.)

7        Claims of ineffective assistance of appellate counsel are reviewed according to the

8    standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Miller v. Keeney</u>, 882 F.2d

9    1428, 1433 (9th Cir. 1989).  A defendant therefore must show that counsel's advice fell below

10   an objective standard of reasonableness and that there is a reasonable probability that, but for

11   counsel's unprofessional errors, he would have prevailed on appeal.  <u>Id.</u> at 1434 & n.9 (citing

12   <u>Strickland</u>, 466 U.S. at 688, 694).

13       Applying these legal principles to the instant matter, the Court concludes that Petitioner's

14   claim is without merit.  Petitioner, with one exception,[11] has not listed any claims his appellate

15   counsel failed to raise on appeal, or any failures in the appellate brief that was filed.  Rather, he

16   claims that appellate counsel should have presented "all of Petitioner's issues."  Without a

17   reasonably detailed claim, this Court cannot assess whether appellate counsel's performance was

18   deficient, nor whether any alleged deficiencies resulted in prejudice to Petitioner.

19   Accordingly, Petitioner's claim is denied.

20

21
_____

22       [10] Petitioner contends that "when the jury came into the court room to render their
     verdicts, one woman bent over towards juror #523 and muttered loudly under her breath:
23   "Asshole . . . fucking asshole.  Son of a bitch."  (Pet., P. & A. at 23.)  Petitioner claims that trial
     counsel should have objected to a comment made to a juror, or should have moved for a mistrial.
24    Petitioner's claim on this ground must be denied.  Because the alleged statement was made after
     the jury had arrived at its verdict, it is not possible that such a comment could have influenced
25   said verdict.

26       [11] Petitioner claims that his appellate counsel did not investigate the incident regarding
     Juror #523.  (Pet., P. & A. at 27.)  As the Court stated above, Petitioner has not shown that the
27   alleged comment made to Juror # 523 resulted in prejudice, especially considering that such
     alleged statement was made to a juror after the juror had agreed on a verdict.
28

22

**CONCLUSION**

The Court concludes that the state appellate court's adjudication of the claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts.  Accordingly, the petition is DENIED.

The Clerk shall enter judgment in favor of Respondent, terminate all pending motions, and close the file.


IT IS SO ORDERED.


DATED:  November 16, 2009

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

23